UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TYRONE G. JENKINS,

       Petitioner,

v.                                        CASE NO. 6:06-cv-304-Orl-31DAB

JAMES MCDONOUGH, et al.,

       Respondents.

_____

**ORDER**

       Petitioner filed a petition for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 2). Respondents filed a response (Doc. No. 16) to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a reply (Doc. No. 20) to the response.

**I.     Procedural History**

       Petitioner was charged by information with robbery with a deadly weapon (count one) and attempted first-degree premeditated murder (count two). After a jury trial, he was found guilty as charged in both counts and was sentenced, as a prison releasee reoffender, to life in prison as to count one and a consecutive thirty-year term as to count two. Petitioner filed a notice of appeal, and the Florida Fifth District Court of Appeal *per curiam* affirmed his convictions and sentences. *Jenkins v. State*, 861 So. 2d 1278 (Fla. 5th DCA 2003).

Petitioner filed a Florida Rule of Criminal Procedure 3.800 motion to correct his sentence arguing that the imposition of consecutive sentences was improper. The state trial court agreed and subsequently resentenced him to reflect concurrent, rather than consecutive, sentences.

Petitioner filed a state petition for writ of habeas corpus contending that he received ineffective assistance of appellate counsel. The appellate court summarily denied the petition.

Petitioner next filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief, which the state trial court denied. The appellate court *per curiam* affirmed the denial.

Petitioner filed a second Rule 3.850 motion, which the state trial court also denied. The appellate court *per curiam* affirmed the denial.

## II.    *Governing Legal Principles*

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of

state-court rulings is highly deferential and that state court decisions must be given the benefit of the doubt).

**A.      *Exhaustion and Procedural Default***

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b);  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)      the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)      (i)      there is an absence of available State corrective process; or
>
>            (ii)      circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but that would clearly be barred if returned to state court.  *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet

3

the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The Court further explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice. To establish cause, "a petitioner must

4

demonstrate that some objective factor external to the defense impeded [his] effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the claim been presented. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice" exception, occurs only in the extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). "'To be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense in light of the new evidence. *Schlup*, 513 U.S. at 327.

**B.   *Standard of Review Under the AEDPA***

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final"), *cert. denied*, 127 S.Ct. 1126 (2007).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S.Ct. 348 (2006).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.   *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## C.   *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

It is well established that the right to effective counsel extends to a defendant's direct appeal.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  The Eleventh Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).  Thus, in order to establish ineffective assistance of appellate counsel, Petitioner must show (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687-88.

8

### III.    Petitioner's Claims

Petitioner alleges eight claims that he received ineffective assistance of counsel (claims 1-8), one *Brady* claim (claim 9), one claim of prosecutorial misconduct (claim 10), two claims of fundamental error (claims 11 and 12), and one claim of the denial of the right to confront his accuser (claim 13).

### A.    Claims One Through Eight

Petitioner contends that he received ineffective assistance of counsel because his attorney (1) failed to depose Deputy Linda Moros, which prevented proper impeachment at trial; (2) failed to depose store owner Kudret Turkimani, the victim's employer; (3) failed to advise the jury of the internal investigation regarding falsification of records by FDLE crime lab analyst John Fitzpatrick; (4) failed to depose Detective Glen Thomas; (5) failed to depose Deputies Anderson, Raven, and Murray, who had direct knowledge of the statements made by the victim at the scene of the crime; (6) failed to move the court prior to trial to determine whether the victim was "unavailable" and whether the trial testimony of Linda Moros, Glen Thomas, and Kudret Turkimani was "reliable" before being admitted under the hearsay exception; (7) waived Petitioner's right to a speedy trial without telling him and without making sure he was present in open court when the waiver occurred; and (8) failed to move to suppress the $454.00 which was allegedly robbed from the victim. *See* Doc. No. 2 at 9-11.

### 1.    *Facts Established at Trial*

Deputy Dennis Casey testified that while driving his patrol car on the evening of May 11, 2000, he saw a man exit an Amoco station building with his arms crossed and screaming.  (App. B at 305.)  Deputy Casey pulled his vehicle into the station parking lot and, as he was preparing to make a call on his radio, he saw another male exit the same door of the Amoco station.  *Id*. at 307.  The second man had a large, white cloth wrapped around his face, a bundle of money in one hand, and a sharp object in the other.  *Id*. at 308.  When this individual saw Deputy Casey, he began to run.  *Id*. at 309.  Deputy Casey reported an armed robbery on his radio and pursued the suspect in his vehicle.  *Id*.  According to Deputy Casey, the suspect was a black male wearing a green t-shirt and blue jeans.  *Id*. at 310.  At one point during the chase, the white covering fell off and Deputy Casey saw the suspect's face.  *Id*. at 310-11.  In court, Deputy Casey identified Petitioner as the person he chased.  *Id*. at 311-12.

Deputy Casey continued to pursue Petitioner through a Burger King parking lot. *Id*. at 314-15, 319-20.  Eventually, a back-up police officer arrived and joined in the pursuit. *Id*. at 322.  Both the back-up officer and Deputy Casey exited their vehicles and ran after Petitioner.  *Id*. at 323.  They apprehended him in the vicinity of a Sears and Roebuck building.  *Id*. 323-24.  At the time, Petitioner still had money in his hand, but it scattered all over the ground when the deputies grabbed him.  *Id*. at 324.

Deputy Dean Primavere, the back-up officer who assisted in apprehending Petitioner, testified that he responded to a call involving an armed robbery.  (App. B at

351.)  He saw Deputy Casey pursuing a black male with a green shirt and dark colored pants.  *Id*. at 353.  Deputy Primavere began to chase Petitioner on foot, and Deputy Casey soon followed suit.  *Id*.  355.  They caught Petitioner and used defensive tactics to get him to the ground.  Deputy Primavere saw a lot of money in Petitioner's hand, and the money flew all over the sidewalk when the deputies took him down.  *Id*. at 356.  After the scene was secured, Deputy Primavere gathered all the money he could find and put it in a plastic bag.  *Id*. at 356-57.  Deputy Primavere also identified Petitioner in court as the person he chased and apprehended.  *Id*. at 364.

Deputy Linda Moros[2] was dispatched to the Amoco station at approximately 9:30 on May 11, 2000.  (App. B at 373.)  She found a man standing on the sidewalk in a dark blue Amoco shirt holding his arm and screaming, "Help me.  I'm dying.".  *Id*. at 374-75.  Deputy Moros laid the man, who was covered in blood, on the ground.  *Id*. at 376.  He was extremely pale, sweating profusely, bleeding profusely from his upper left arm, and kept telling her that he was dying.  *Id*.  Deputy Moros lifted the man's shirt and discovered multiple stab wounds to his chest.  *Id*. at 377.  With the assistance of another deputy, she plugged the holes with her fingers to stop the bleeding and used her knee to apply pressure to the wound on the victim's arm.  *Id*. at 377-79.  In response to her questions, the victim indicated that he had been robbed by a black male with a white t-shirt over his face.

---

[2]Deputy Moros testified that she was previously known by the last name of Murray. *Id*. 372.  Although during the trial several individuals referred to her as Deputy Murray, for consistency, the Court will use her name at the time of trial, Moros.

11

*Id*. 379-80.   Deputy Moros identified a picture of the victim which was entered into evidence as State's Exhibit 3.  *Id*. at 7, 380-81.

On cross-examination, Deputy Moros indicated that she and her partner, Deputy Raven, were the first people on the scene with the victim.  (App. B at 382-83.)  Deputy Raven attended to the traffic and secured the area.  *Id*. at 383.  Corporal Gary Anderson helped to apply pressure to the victim's wounds, and Agent Glen Thomas was also on the scene.  *Id*.  Defense counsel elicited from Deputy Moros that she had not included in her report the victim's statements that he had been robbed, that the robber was a black male, or that there was no one else in the store.  *Id*. at 387-88.

Dr. Edgar Figueror, a trauma surgeon at the Holmes Regional Trauma Center, testified that he performed emergency surgery on a person at approximately 10:00 p.m. on May 11, 2000.  (App. B at 398-99.)  He identified State's Exhibit 3, the photograph of the victim identified by Deputy Moros, as the person upon whom he operated.  *Id*. at 399.  During the course of his examination, Dr. Figueror documented twelve stab wounds on the victim.  *Id*. at 409.

Courtney Roslyn, a sixteen-year old girl, and her father, Tom Roslyn, both testified at trial.  Courtney stated that as she and her family were exiting the Burger King, she saw a short black man wearing a green shirt and dark jeans running towards them.  (App. B at 425, 426-27.) She heard a siren and saw a police car come around the corner.  *Id*. at 425.  She also heard a clink sound as the man dropped something.  *Id*. at 425, 430-31.  He then turned

around and ran from the police.  *Id.* at 425.  Courtney went to the area from which she heard the clink sound and found a knife on the ground.  *Id.* at 430-31.

Tom Roslyn also testified that he saw a black male wearing a dark green shirt running towards him as he and his family exited the Burger King.  (App. B at 447, 449-50.) In addition, Mr. Roslyn stated that the man had a handful of money and that he dropped a steak knife on the ground.  *Id.* at 450, 451-53.

Deputy Glen Thomas testified that he was the case agent assigned to the case.  (App. B at 459.)  When he arrived at the Amoco station, the victim was still laying on the sidewalk and Deputies Moros, Raven, and Anderson were attending to him.  *Id.* at 459.  While at the Amoco station, Deputy Thomas heard the victim indicate that he was dying and that one black male robbed him.  *Id.* at 460.

Virginia Casey, a crime scene investigator, testified that Deputy Primavere released to her the money he collected at the scene of Petitioner's arrest.  (App. B at 488.)  She counted $454.00.  *Id.* at 491.  However, the exhibit presented to her at trial had been opened since she had bagged the money.  *Id.* at 492.  The prosecutor later testified that he had opened the exhibit earlier that day to ensure that it contained the money indicated on the evidence receipt.  *Id.* at 641-42, 643-44.

Kudret Turkimani, who was the owner of the Amoco station where the robbery occurred, testified that Harun Bozyurt was working for him at the station on the evening of May 11, 2000.  (App. B at 830-31.)  He identified the picture of the victim as being Mr.

Bozyurt.  *Id*. at 831.  In addition, Mr. Turkimani indicated that between four and five hundred dollars were missing from his store after the robbery.  *Id*. at 836.

Yvette McNab, a senior crime lab analyst with the Florida Department of Law Enforcement, testified regarding the DNA tests she conducted.  Specifically, she indicated both Petitioner and the victim were donors of the DNA profiles on the knife found in the Burger King parking lot by the Rosalyns .  (App. B at 919-20.)  In addition, she also found DNA profiles on Petitioner's shirt that matched the victim's DNA profile.  *Id*. at 920-21.

### 2.    *Claims One, Two, Four, and Five*

In claims one, two, four, and five, Petitioner argues that his trial counsel was ineffective for failing to depose Deputy Linda Moros (claim one), store owner Kudret Turkimani (claim two), Detective Glen Thomas (claim four), and Deputies Anderson, Raven, and "Murry"[3] (claim five).

Petitioner's allegations are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel.  *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994).  Petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance."  *See United States v. Moya-Gomez*, 860 F.2d 706, 764 (7th Cir. 1988).  Moreover, he must provide evidence, not mere conclusory allegations that counsel overlooked exculpatory information.  *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th

---

[3]It is not clear whether Petitioner is referencing Deputy Moros, whose last name at the time of the incident was Murray, or a Deputy "Moore," who is referenced in the body of his Rule 3.850 motion.  *See* App. E at 44.

Cir. 1991); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.)

In the present case, Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995). Petitioner has not alleged what, if any, information would have been gleaned from deposing these particular individuals. Furthermore, he has not demonstrated how deposing these individuals would have benefitted him at trial. Clearly, these claims are insufficiently pled and must be denied.[4]

>    3.    ***Claim Three***

Petitioner ascribes error to his trial counsel's failure to advise the jury of the internal investigation regarding falsification of records by FDLE crime lab analyst John Fitzpatrick. The state trial court considered and rejected this claim, finding that there was no indication that Mr. Fitzpatrick had ever handled the DNA involved in Petitioner 's case. *See* App. E at 101. The appellate court *per curiam* affirmed.

This Court agrees with the state trial court's analysis of this claim. As set forth above, Yvette McNab was the FDLE crime lab analyst who examined the DNA in

---

[4]To the extent that Petitioner relies on the facts and arguments set forth in his Rule 3.850 motion, § 2254(d) precludes this Court from granting relief. A review of the record reveals that the state court's denial of such claims was neither contrary to, nor an unreasonable application of, the standard set forth in *Strickland*. Additionally, Petitioner has not shown that the state court decision was based on an unreasonable determination of the facts.

Petitioner's case and testified at his trial.   Petitioner has not even alleged that Mr. Fitzpatrick had any involvement in his case.   The state court's decision was neither contrary to nor an unreasonable application of clearly established federal law and there has been no showing that the decision was based on an unreasonable determination of the facts.   Relief must be denied under § 2254(d).

### 4.   *Claim Six*

Petitioner contends that defense counsel failed to move the court prior to trial to determine whether the victim was "unavailable" and whether the trial testimony of Deputy Moros, Deputy Thomas, and Mr. Turkimani was "reliable" before being admitted under the hearsay exception.   Again, Petitioner provides no specific facts or argument in support of his claim.   However, he raised this claim in his Rule 3.850 motion, albeit with considerably more information, and the state trial court denied the claim, as follows:

> As to the statements of Moros and Thomas, under section 90.803(2), Florida Statutes (2000), an excited utterance is admissible regardless of whether the declarant is available or not.   This Court has addressed the Defendant's claims regarding the reliability of Moros and Thomas under paragraphs g, m, and n of this order.   As to the Defendant's claim regarding Turkimani, Turkimani testified at trial that the victim's name was Harun Bozyurt.   The Defendant's attorneys objected to this testimony as hearsay because Turkimani did not have personal knowledge of the victim's name.   The State attorney presented evidence that the victim was unavailable and the Court ruled that the hearsay evidence was admissible.   The Defendant's attorneys were not ineffective for failing to require the Court to make a finding that the victim was unavailable and that Turkimani was an unreliable witness because the attorneys did make a hearsay objection to the witness' hearsay testimony.

(App. E at 104.) (Citations omitted.)   The appellate court *per curiam* affirmed the denial.

The record supports and this Court concurs with the state trial court's decision. Presumably, Petitioner is challenging Deputies Moros and Thomas' testimony concerning the victim's statements that he was robbed by a black male and that no one else was present. These were the excited utterances of the victim made shortly after the incident occurred and while the victim, in his own words, believed he was dying. Clearly, these statements were admissible exceptions to the hearsay rule. Furthermore, the state trial court, in considering trial counsel's objection to Mr. Turkimani's identification of the victim, specifically found that the victim was unavailable. *See* App. B at 782 ("The Court finds that that information as well as other information adduced does meet the requisite for establishing that the victim is unavailable . . . ."). Under § 2254(d), this Court is precluded from granting relief on this claim.

### 5.   *Claim Seven*

According to Petitioner, defense counsel waived his right to speedy trial without telling Petitioner and without ensuring that Petitioner was present in open court. This issue was presented in Petitioner's Rule 3.850 motion. Citing Florida law for the proposition that speedy trial is waived when a defendant or counsel requests a continuance and that acts of counsel are binding on the defendant even if done without consultation or against the defendant's wishes, the trial court denied this claim on the merit. The appellate court *per curiam* affirmed the denial.

The record reflects that defense counsel moved for a continuance and waived speedy trial because he needed more time to prepare for trial. This Court agrees with the

state court's determination that such actions by defense counsel were reasonable. Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" *Strickland*. Furthermore, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts.  Based on the foregoing, it is clear that claim seven must be denied under § 2254(d).

### 6. *Claim Eight*

Petitioner complains that defense counsel failed to move to suppress the $454.00 that were allegedly taken from the victim.  Petitioner has not provided any basis for suppression of the money.  This claim is vague and conclusory and cannot support a finding of ineffective assistance of counsel and must be denied.[5]

### B. *Claims Nine Through Thirteen*

In claims nine through thirteen, Petitioner argues that the State presented evidence at trial that was withheld from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (claim nine); that the prosecutor improperly tampered with State's Exhibit C (claim ten); that the trial court abused its discretion and allowed the prosecutor to vouch for the prosecution of Petitioner (claim eleven); that the trial court abused its discretion by

---

[5]To the extent that this claim is premised on the facts and arguments set forth in Petitioner's Rule 3.850 motion, it must be denied under § 2254(d).  The record supports the state trial court's determination that the money was relevant to Petitioner's guilt and that trial counsel was not ineffective.  *See* App. E at 105-06.  The finding was not contrary to or an unreasonable application of *Strickland*, and Petitioner has not shown that it was based on an unreasonable determination of the facts.

allowing the introduction of unreliable testimony (claim twelve); and that his constitutional right to confront his accuser was violated (claim thirteen).

All five of these claims were raised in Petitioner's second Rule 3.850 motion and found to be procedurally barred. This determination was affirmed on appeal. Because the last state court rendering a judgment in Petitioner's case clearly and expressly stated that its judgment rested on the procedural bar, all five claims are procedurally barred in this Court. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) ("[P]er curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal court.").

Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actual innocence exception. A review of the record reveals that the Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claims nine through thirteen are procedurally barred.[6]

---

[6]In claim twelve, Petitioner argues that the trial court abused its discretion by allowing unreliable testimony. According to Petitioner, the trial court failed to make a finding of unavailability of the victim or reliability of the testimony of Linda Moros, Glen Thomas, and Kurdet Turkimani. On direct appeal, Petitioner raised a similar claim as to Mr. Turkimani only. To the extent that the claim is the same as the one raised in this case, the claim is not procedurally barred. However, the claim only involves a challenge to a state court's evidentiary ruling.

"Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial." *McCoy v. Newsome*, 953 F.2d 1252, 1265

(continued...)

## C.    Additional Claims

In his reply to Respondents' response to the petition, Petitioner asserts that he raised twenty-two grounds for relief.  Despite the fact that he clearly set forth only thirteen claims in section twelve of the form petition, which is specifically designated as the place to list the grounds being asserted, Petitioner contends that he also intended to raise the four claims listed from his direct appeal and the five claims listed from his state habeas petition. *See* Doc. No. 20 at 1.  Although this Court believes that these additional nine claims have not been properly raised, out of an abundance of caution, the claims will be considered as claims fourteen through twenty-two.

---

[6](...continued)
(11th Cir. 1992); *see also Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("We review questions of state law in federal habeas proceedings only to determine whether the alleged errors were so critical or important to the outcome of the trial to render 'the entire trial fundamentally unfair.'").  The state trial error must have been "material in the sense of a crucial, critical, highly significant factor."  *Tejada*, 941 F.2d at 1560 (quotation omitted) (citations omitted); *see also Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (generally, a federal court will not review a state trial judge's ruling with respect to the admissibility of evidence; an erroneous ruling alone does not warrant habeas corpus relief); *Palmariello v. Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 494 (1st Cir. 1989) ("Habeas review does not ordinarily encompass garden variety evidentiary rulings.").

In the present case, Petitioner has not demonstrated that the evidentiary ruling made by the trial court with regard to this matter was erroneous or deprived him of a fundamentally fair trial.  In fact, as discussed in connection with claim six, the evidentiary ruling was supported by the record.  Moreover, Petitioner has failed to establish that the alleged error by the trial court with regard to this matter had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (the petitioner must demonstrate that the "trial error" had a substantial and injurious effect or influence in determining the jury's verdict).  A review of the record reveals that the evidence against Petitioner was substantial.

1. *Claim Fourteen*

Petitioner argues that the trial court erred in permitting, over defense objection, a prosecution witness to identify the alleged victim as Harun Bozyurt when such testimony was inadmissible hearsay.  As discussed in footnote 6, this claim involves a challenge to a state court's evidentiary ruling and does not go to the fundamental fairness of Petitioner's trial.  Therefore, it must be denied.

2. *Claim Fifteen*

According to Petitioner, the state trial court erred in refusing to give a requested jury instruction on identification of the victim.  Petitioner does not specify the substance of the requested instruction or set forth how the omission of such an instruction impacted his trial. Thus, this claim is vague, conclusory, and insufficient to support the granting of relief.

Furthermore, "[a]n error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process."  *Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992) (quotation omitted). "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness."  *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986).  Indeed, "[a] defective jury charge raises an issue of constitutional dimension only if it renders the entire trial fundamentally unfair."  *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)

(quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).  Petitioner has not shown, or even alleged, that the trial court's refusal to give the requested jury instruction rendered his trial fundamentally unfair or that the failure so infected the entire trial that his resulting convictions violated due process.

### 3.       Claim Sixteen

Petitioner argues that the trial court erred in denying his motion for judgment of acquittal.  Again, this claim contains no specifics.  Petitioner has failed to identify any deficiency in the evidence against him or any reason why a judgment of acquittal was warranted.  Accordingly, the claim is vague, conclusory, and insufficient to support federal habeas relief.

Even when considered on the merits, Petitioner's sufficiency of the evidence argument must fail.  The standard of review in a federal habeas corpus proceeding when the claim is that the petitioner has been convicted on insufficient evidence was articulated in *Jackson v. Virginia,* 443 U.S. 307 (1979).  The Supreme Court in *Jackson* described the inquiry as follows:

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319.  Although the facts as they exist in the record may support opposing inferences, a federal habeas court must presume that the jury resolved such conflicts in favor of the prosecution and against the defendant.  *See Heath v. Jones,* 863 F.2d 815, 820 (11th Cir. 1989);

*Machin v. Wainwright,* 758 F.2d 1431, 1435 (11th Cir. 1985) (the federal habeas court must presume that conflicting inferences to be drawn from the evidence were resolved by the trier of fact in favor of the prosecution).

The jury obviously found the evidence presented by the State credible. The Court determines that a rational trier of fact could have found the evidence sufficient to establish, beyond a reasonable doubt, that Petitioner committed armed robbery and attempted first-degree murder. Almost immediately after seeing the victim screaming in the parking lot, a police officer observed Petitioner, a black male wearing a green shirt and dark jeans, exit the Amoco station with his face covered. Petitioner ran from the officer, who pursued and, eventually, captured him. The victim, who had been stabbed multiple times, indicated that he had been robbed by a black male. Two witnesses saw Petitioner running from the police with money in his hand and observed him drop a steak knife. The knife contained DNA consistent with having come from both the victim and Petitioner. In addition, the victim's blood-stained shirt contained DNA consistent with having come from Petitioner.

Accordingly, this Court concludes that the evidence, when viewed in a light most favorable to the State and resolving all conflicts in favor of the prosecution, mandates the denial of this claim. *See Shaw v. Boney,* 695 F.2d 528, 531 n.6 (11th Cir. 1983). Under the *Jackson* standard, there was sufficient evidence to support the jury's verdicts.

### 4.    *Claim Seventeen*

Petitioner avers that his due process rights were violated when the trial court erred in overruling objections and denying motions for mistrial during closing arguments

because the prosecutor's comments were improper and inflammatory. Petitioner has failed to identify the allegedly improper and inflammatory comments made by the prosecutor. Consequently, this claim is insufficient to support federal habeas relief.

Moreover, this claim is subject to denial on the merits. To determine whether Petitioner is entitled to relief based on the prosecutor's comment, this Court must engage in a two-pronged analysis: first, whether the prosecutor's comment was improper; and, second, whether any comment found to be improper was so prejudicial as to render the entire trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987). The trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different . . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations omitted) (quotations omitted). In *Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985), the Eleventh Circuit stated as follows:

> Improper argument will only warrant relief if it renders a petitioner's trial or sentencing fundamentally unfair. That determination depends on whether there is a reasonable probability that, in the absence of the improper arguments, the outcome would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations omitted) (quotations omitted).

Assuming that the prosecutor's comments were improper, when considered in the context of the entire proceeding such comments in no way rendered the entire proceeding unfair. Defense counsel raised objections to various arguments made by the prosecutor.

Some of the objections were sustained, while others were overruled.  On at least one occasion, the trial judge offered to issue a curative instruction, but defense counsel declined the offer.

Petitioner has not demonstrated that "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different."  *United States v. De La Vega*, 913 F.2d 861, 872 (11th Cir. 1990) (prosecutorial remarks that defendant was "tripping over his own lies" and that the defense was using "smokescreens" were innocuous and defendant received a fair trial); *Gates v. Zant*, 863 F.2d 1492, 1502-03 (11th Cir. 1989) ("several of these arguments were improper . . . .  Considering the totality of the circumstances, however, these arguments did not render the sentencing proceeding fundamentally unfair.").  In light of the overwhelming evidence of Petitioner's guilt, the comments did not render the trial proceedings fundamentally unfair.  Thus, this claim is without merit.

### 5.     *Claim Eighteen Through Twenty-Two*

In claims eighteen through twenty-two, Petitioner contends he received ineffective assistance of appellate counsel because the following five issues should have been raised on direct appeal: (a) the trial judge abused his judicial discretion by denying Petitioner's motion to suppress evidence of DNA test results (claim 18); (b) the prosecutor tampered with State's Exhibit C[7] (claim 19); (c) the trial judge abused his discretion when he allowed the prosecutor to testify at trial regarding the incident with State's Exhibit C (claim 20); (d)

---

[7]State's Exhibit C was entered into evidence as State's Exhibit 49.  (App. B at 647.)

fundamental error because Petitioner was denied his right to a speedy trial (claim 21); and (e) the trial judge abused his discretion by not removing defense counsel after hearing Petitioner's complaints concerning a conflict (claim 22). Petitioner has provided no further details, facts, or argument concerning any of these five claims. These claims are vague, conclusory, and insufficiently pled to grant relief.

The Court also notes that Petitioner's appellate counsel raised four issues on direct appeal: (1) that the trial court erred in permitting over defense objection a state witness to identify the alleged victim as Harun Bozyurt where such testimony was inadmissible hearsay; (2) that the trial court erred in refusing to give a requested jury instruction on identification of the victim; (3) that the trial court erred in denying Petitioner's motion for judgment of acquittal; and (4) that, in violation of the constitutional guarantee of due process of law, the trial court erred in overruling objections and denying motions for mistrial during closing arguments where the prosecutor's comments were improper and inflammatory. *See* App C at 11-27. Petitioner's appellate counsel submitted an initial brief which was comprehensive, thorough, and well-argued. Certainly, the record clearly evinces the thoroughness and reasonableness of appellate counsel's work. *Cf. Thomas v. Scully*, 854 F. Supp. 944 (E.D.N.Y. 1994) (the appellate brief submitted by counsel clearly showed the thoroughness of counsel's work). The fact that other issues might have succeeded in the appellate court "does not lead automatically to the conclusion that [Petitioner] was deprived of a constitutional right when his lawyer failed to assert such a claim." *Woodwork v. Russell*, No. 92-4301, 1994 WL 56933, at *4 (6th Cir. February 24, 1994)

(unpublished opinion).  As discussed by the district court in *Richburg v. Hood*, 794 F. Supp. 75 (E.D.N.Y. 1992),

> [T]he court simply notes that the decision of appellate counsel to choose among plausible options of appellate issues is preeminently a strategic choice and is "virtually unchallengeable."  The petitioner has not even undertaken to demonstrate that the decision of his attorney not to raise this issue constituted and "unprofessional error" or that such error prejudiced his appeal.

*Id.* at 78.

The Court finds that appellate counsel's decision not to raise the additional issues suggested by Petitioner was consistent with reasonable appellate strategy that, under the deferential standard of review articulated in *Strickland*, should not be second-guessed.  *See Gray v. White*, No. C-94-2434 EFL, 1997 WL 16311, at *9 (N.D. Cal. Jan. 6, 1997) ("[A]ppellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.") (citations omitted); *Carlos v. Cruz*, No. CV 96-5209 (RED), 1997 WL 269591, at *4 (E.D.N.Y. Apr. 21, 1997) (unpublished opinion) ("On appeal, counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims"; furthermore, the Court must not second-guess the reasonable decisions of appellate counsel to press certain issues instead of others, and the lack of success on appeal is not a basis to impugn appellate counsel's reasonable choices or performance), *aff'd*, 133 F.3d 906 (2nd Cir. 1997).   Moreover, Petitioner has not demonstrated that any of his suggested issues would have been successful on appeal.

27

Accordingly, in light of (1) the discretion afforded to appellate counsel in selecting those issues most promising for review, and (2) Petitioner's failure to demonstrate that the issues would have been viable on appeal, the Court finds that appellate counsel's performance was not deficient and that Petitioner has not demonstrated prejudice.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Tyrone G. Jenkins is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 18th day of April, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sa 4/18
Counsel of Record
Tyrone G. Jenkins